UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GREGORY C. PRICE,

      Plaintiff,

v.                        Case No: 2:19-cv-655-FtM-29MRM

LAKEVIEW LOAN SERVICING,
LLC,

      Defendant.

_____

**OPINION AND ORDER**

     This matter comes before the Court on review of defendant's Motion to Dismiss Amended Complaint (Doc. #46) filed on July 13, 2020.  In addition, defendant filed a Motion for Sanctions Pursuant to Rule 11 (Doc. #47) on August 21, 2020.  Plaintiff did not file responses to either of Defendant's Motions.  For the reasons set forth below, the Motion to Dismiss is granted and the Motion for Sanctions is denied.

**I.**

     *Pro se* plaintiff Gregory C. Price (Plaintiff) had initially filed a complaint[1] (Doc. #3) against defendant Lakeview Loan Servicing, LLC (Defendant or Lakeview), which this Court dismissed

_____

[1] Plaintiff's initial pleading was titled as a "Court of Record Tort Claim Petition and Request for a Hearing or Trial by Jury," which the Court construed as a complaint. (Doc. #3; Doc. #41, p. 1, n.1.)

without prejudice as a shotgun pleading.  (Doc. #41, p. 5.)  On May 7, 2020, Plaintiff filed a six-count Amended Complaint[2] asserting claims against Defendant for fraud (Count I); breach of contract (Count II); violation of Racketeering, RICO (Count III); "lack of jurisdiction to collect as holder in due course" (Count IV); financial discrimination (Count V); and other crimes (Count VI).[3]  (Doc. #42, pp. 4-19.)  Plaintiff seeks $8,091,441.74 in damages, fees, and refunds of mortgage loan payments made from October 2013 through May 2020.[4] (Id., p. 25.)

The dispute in this case is based upon a promissory note Plaintiff executed on August 29, 2013, to secure a mortgage for real property located at 1057 Bay Harbor Drive, in Englewood, Florida (the Bay Harbor property), in the amount of $142,348.00 and in favor of United Wholesale Mortgage.[5]  (Docs. ##42, ¶¶ 10,

_____

[2] Plaintiff's second pleading is entitled "Amended Court of Record Tort Claim Petition and Request For a Hearing or Trial By Jury." (Doc. #42, p. 1.) The Court refers to this document as the "Amended Complaint."

[3] Plaintiff alleges that Defendant committed "other crimes," including "collusion/conspiracy and theft by deception," unjust enrichment, extortion, duress, illegal interest charged/collected, and mail fraud. (Doc. #42, pp. 17-19.)

[4] Plaintiff cites to no legal authority that serves as the basis for his demand for damages, fees, or refunds. See (Doc. #42.)

[5] Plaintiff did not attach a copy of the at-issue Note and mortgage that are referenced in the Amended Complaint and are central to Plaintiff's claims. See (Doc. #42.) Defendant, however, attached an executed Note and recorded mortgage to its Motion to Dismiss. (Docs. ##46-1; 46-2.) Typically, the Court

2

27; 46-1; 46-2.)  The mortgage (Security Instrument) was given to Mortgage Electronic Registration Systems, Inc. (MERS)[6] as mortgagee, and was recorded with the Charlotte County Clerk of Court in Florida, on September 3, 2013.  (Doc. #46-2.)  At an unspecified time, Lakeview was assigned servicing rights to Plaintiff's mortgage.  (Doc. #42, ¶¶ 10, 44.)

Although the Amended Complaint is incoherent and difficult to discern, it appears that Plaintiff suspected "anomalies" in the "mortgage and NOTE" concerning the Bay Harbor property, which is serviced by Defendant.  (Id. at ¶ 10.)  Consequently, Plaintiff

---

cannot consider matters outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss unless the court converts the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010). Nevertheless, a district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999). "Public records are among the permissible facts that a district court may consider." Universal Express, Inc. v. United States SEC, 177 F. App'x 52, 53 (11th Cir. 2006) (citing Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003)).  The Court takes judicial notice of the Note and recorded mortgage as they are public records, and in doing so, the Court finds it unnecessary to convert Defendant's Motion to Dismiss into a motion for summary judgment.

[6] "MERS is a private electronic database that tracks the owners of deeds of trust and the mortgage servicing firms on behalf of its member organizations through a unique mortgage identification number." Parker v. America's Servicing Co., No. 1:11-CV-1620-TCB-ECS, 2012 U.S. Dist. LEXIS 198809, at *15-16 (N.D. Ga. Aug. 31, 2012) (quoting Michael A Valenza, Digest of Selected Articles, 40 Real Est. L.J. 260 (2011)).

requested that Defendant provide the "QWR validity report of the mortgage and NOTE" with an original blue-ink signature, but Defendant failed to do so.  (Id. at ¶¶ 10-11.)  Because the blue ink-signed Note was not presented to Plaintiff, the Amended Complaint alleges that Defendant fraudulently attempted to collect mortgage debt for the Bay Harbor property that cannot be verified. (Id., at ¶ 3.)

The Amended Complaint further alleges that on May 8, 2019, in an attempt to pay-off, set-off, discharge, and satisfy the fraudulent mortgage and Note, Plaintiff, a "Licensed, Private Banker," issued and presented to Defendant a U.C.C. Registered, Certified tender of payment via the "Credit Agreement Payoff Security Instrument" No. 000016806 (the Credit Agreement) in the amount of $124,000.[7]  (Id., at ¶¶ 12, 21, 32-33, 35, 67; Doc. #3-2.)  The new terms and conditions of the Credit Agreement included nullifying and voiding Plaintiff's original mortgage debt and replacing it with a one-time final payoff of $1,250, which was to

---

[7] In the Amended Compliant, Plaintiff references the Credit Agreement that was attached as an exhibit (Doc. #3-2) to his initial Complaint (Doc. #3) but is not attached as an exhibit to the Amended Complaint. See (Doc. #42.)  The Court, however, may consider this exhibit, among others, attached to Plaintiff's initial Complaint in ruling on Defendant's Motion to Dismiss. Gross v. White, 340 F. App'x 527, 534 (11th Cir. 2009)("A district court ruling on a motion to dismiss is not required to disregard document that the plaintiff himself filed with his original complaint.")

be retrieved from Plaintiff's residence.[8]   (Id., at ¶¶ 10, 33; Doc. #3-2; Doc. #3-4.)   The Credit Agreement was purportedly issued from the City of Englewood, Florida, on April 19, 2019, and states "this is a Bank Medallion Verified Security signed in Blue Ink" with a signature guarantee from Wells Fargo Bank N.A.   (Doc. #3-2.)   On the second page of the Credit Agreement, is the purported signature of "Gregory C Price: (father, son, holy ghost)."   (Id.) By way of providing the Credit Agreement to Defendant, Plaintiff argues that Defendant "accepted" it as legal tender, and that Defendant breached the Credit Agreement's new terms by continuing

---

[8] Specifically, the Credit Agreement states under its "TERMS AND CONDITIONS"

> The final Payment or Payoff will be made against the obligations of the United States 18 U.S.C. § 8 . . . for full settlement to that part of the public debt due its Principals and Sureties as full consideration claimed debt account closure in a month's installment of $1,250.00 (Twelve Hundred Fifty Security Dollars) up to ten (10) month term or final payment whichever is first. Final Payment or payoff . . . shall be collected by the 7th (Seventh) working day after communication, acceptance, or rejection by Assignee . . . The final payment/payoff is to be collected by Assignee, Claimant, Investor, or Holder on the seventh (7) [sic] working day after receipt . . . from ISSUER/BORROWER at 1057 BAY HARBOR DRIVE, ENGLEWOOD, FLORIDA [[34224]] . . . Failure to follow these terms and conditions, assignee, claimant, investor, bearer, or holder has accepted this Legal Credit Agreement Payoff . . . as full settlement, discharge, set off, closure of claimed debt account.

(Doc. #3-2; Doc. #42, ¶¶ 33-34.)

to send Plaintiff monthly mortgage payment statements for payment of a debt that is allegedly paid-in-full and discharged.  (Doc. #42, ¶ 13.)

Defendant urges the Court to dismiss all counts in the Amended Complaint because it is a shotgun pleading, or in the alternative, fails to state a claim upon which relief may be granted. (Doc. #46.)  Defendant further urges the Court to impose Rule 11 sanctions against Plaintiff, arguing his claims have no reasonable factual basis and have been filed in bad faith for an improper purpose. (Doc. #47, p. 7.)  After addressing Defendant's arguments as to the Amended Complaint, and the Court will discuss whether sanctions are warranted in this case.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also, Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

A *pro se* amended complaint is to be liberally construed and "held to less stringent standards than complaints drafted by lawyers." <u>Stephens v. DeGiovanni</u>, 852 F.3d 1298, 1318 n.16 (11th Cir. 2017). Liberal construction means that a federal court sometimes must "look beyond the labels used in a pro se party's complaint and focus on the content and substance of the

allegations" to determine if a cognizable remedy is available. Torres v. Miami-Dade Cty., Fla., 734 F. App'x 688, 691 (11th Cir. 2018). Yet, there are limits to the court's flexibility as it does not have the "license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014). A pro se pleading "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III.

Prior to the discussion of the merits of Plaintiff's alleged claims, the Court addresses Defendant's argument that Plaintiff's underlying theory for recovery concerning Count II through Count VI appears to be related to the "vapor money" or "unlawful money" theory that derives from the sovereign citizen movement.[9] (Doc. #46, pp. 9-10.) Plaintiff unequivocally denies that he is an

---

[9] "Sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." Persona v. Mackey, No. 2:20-cv-2424-BHH-MHC, 2020 U.S. Dist. LEXIS 204242, at *13 (D.S.C. Oct. 7, 2020)(quoting United States v. Ulloa, 511 F. App'x 105, 106 n.1 (2d Cir. 2013)).

adherent of the "court-made-up oxymoronic term 'Sovereign Citizen [movement]'" because he is a "law-abiding man and obeys the laws of the STATES AND UNITED STATES pursuant to 40 Stat 418, Section 7(e)." (Doc. #42, ¶¶ 7-8.) However, as discussed below, Plaintiff's arguments mirror other litigant's attempts to disavow legal obligations based on the vapor money theory and as such, the Court finds the Amended Complaint, to the extent it relies upon this theory, is "utterly frivolous and lacks any legal foundation." Demmler v. Bank One NA, No. 2:05-cv-322, 2006 U.S. Dist. LEXIS 9409, at *10 (S.D. Ohio Mar. 9, 2006)(in reaching its conclusion, the court considered the plaintiff's complaint that alleged a self-executed promissory note is the equivalent to "money," and was sufficient to pay-off a mortgage and avoid foreclosure).

"The genesis of the vapor money theory is that the decision by the United States in 1933, to discard the gold standard resulted in the federal government's bankruptcy, after which 'lenders have been creating unenforceable debts because they are lending credit rather than legal tender.'" Goodwin v. Flagstar Bank, No. 1:19-cv-859, 2019 U.S. Dist. LEXIS 225173, at *7 (W.D. Mich. Dec. 23, 2019)(quoting Marvin v. Capital One, 2016 U.S. Dist. LEXIS 117344, 2016 WL 4548382 at *4 (W.D. Mich., Aug. 16, 2016)) (citations omitted). See also, Johnson v. Deutsche Bank Nat'l Tr. Co., No. 09-21246-CIV, 2009 U.S. Dist. LEXIS 84092, at *3 (S.D. Fla. June 30, 2009). Accordingly, pursuant to the vapor money theory, a

loan imposes no repayment obligation on the recipient if the indebtedness was funded with credit as opposed to hard currency. See Rodriguez v. Countrywide Home Loans, Inc., No. 08-23119-CIV, 2008 U.S. Dist. LEXIS 110010, at *4 (S.D. Fla. Dec. 29, 2008) (noting the vapor money theory holds that payments for economic obligations cannot be made by check or other similar instruments as they are illegal and do not create a legally cognizable debt.) "The essence of the 'vapor money' theory is that the promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." McLaughlin v. CitiMortgage, Inc., 726 F. Supp. 2d 201, 212 (D. Conn. 2010) (citation omitted).

Here, the Amended Complaint generally alleges that because Defendant did not produce an "original Blue-ink Signed NOTE and Mortgage Lien Contract Security," there is no verifiable proof of mortgage debt, and that by providing a self-executed Credit Agreement Payoff Security Instrument (which he argues is "money"), Plaintiff has provided payment and full satisfaction of his mortgage debt. (Doc. #42, ¶¶ 2, 4, 12, 32.) As stated, the Court finds that Plaintiff has provided no substantive basis in the law to demonstrate that Plaintiff is **not** indebted with respect to the mortgage for the Bay Harbor property, or that his mortgage debt is satisfied by the purported Credit Agreement. "While dollar bills and coins have been declared by Congress to be legal tender, not

all debts must be paid in legal tender if the parties agree."
Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *4 (citing Nixon v.
Individual Head of the St. Joseph Mortgage Co., 615 F. Supp. 898,
900 (N.D. Ind. 1985)). Plaintiff signed a "Note" which states
that on August 29, 2013, the borrower's promise to pay $142,348 at
a 4.75% interest rate, was secured by a mortgage, deed of trust,
or similar security instrument. (Doc. #46-1.) The record reflects
that a mortgage for the Bay Harbor property was recorded on
September 3, 2013, with the Charlotte County Clerk of Circuit
Court. (Doc. #46-2, p. 2.) According to these documents, Plaintiff
has implicitly agreed that Defendant may use negotiable
instruments to secure the mortgage debt, and has assented to this
arrangement since 2013, by paying the mortgage debt and enjoying
the benefit of living at the Bay Harbor property. "Plaintiff's own
experience in financing [his] home[] with funds obtained through
these mortgage loans 'indicates that the market place recognizes
the value of credit and checkbook money, so that [plaintiff] has
suffered no damages and has no valid claim to advance here.'"
Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *5 (quoting Nixon v.
Individual Head of the St. Joseph Mortg. Co., 615 F. Supp. 899,
901 (N.D. Ind. 1985)).

     In addition, Plaintiff relies on a fictious Credit Agreement
that he executed and presented to Defendant, in asserting that his
original mortgage debt is satisfied, and null and void. However,

other federal district courts have overwhelmingly rejected this reasoning based on the vapor money theory. See, e.g., Awai v. USAA Fed. Sav. Bank, Civil Action No. 20-632, 2020 U.S. Dist. LEXIS 128056, at *7 (W.D. Pa. July 20, 2020)(plaintiff, who claimed to be a Registered Private Banker, submitted a "Credit Agreement Payoff Security Instrument" to discharge and satisfy his mortgage, which the Court found to be a variation of the vapor money theory and dismissed the complaint as "patently frivolous"); Winsey v. Nationstar Mortg., LLC, No. 8:17-cv-979-T-33AEP, 2017 U.S. Dist. LEXIS 100731 (M.D. Fla. June 29, 2017)(dismissing money vapor claims as "utterly meritless"); Johnson, 2009 U.S. Dist. LEXIS 84092, at *11 (finding complaint based on vapor money theory "lacks legal merit and should be dismissed); Sanford v. Robins Fed. Credit Union, No. 5:12-CV-306, 2012 U.S. Dist. LEXIS 165230, 2012 WL 5875712, at *3-4 (M.D. Ga. Nov. 20, 2012)(quoting case law denoting the vapor money theory as "'equal parts revisionist legal history and conspiracy theory'" and dismissing the plaintiff's complaint for failing to state an actionable claim); Carrington v. Fed. Nat'l Mortg. Assoc., Case No. 05-73429, 2005 U.S. Dist. LEXIS 31605, 2005 WL 3216226, at *2 (E.D. Mich. 2005) (recognizing that vapor money theory has been "universally rejected by numerous federal courts.").[10]

---

[10] See also, Ivy v. Wells Fargo Bank, N.A., No. 2:19-cv-01046-RAJ-BAT, 2019 U.S. Dist. LEXIS 182913, at *15 (W.D. Wash. Aug. 29,

Based on the foregoing, this Court also concludes that Count II through Count VI of the Amended Complaint lack legal merit and are frivolous as they are based upon a variation of the vapor money theory.  Because any amendment to the complaint would be futile in light of Plaintiff's patently frivolous claims, the Court will dismiss Count II through Count VI of Plaintiff's complaint with prejudice.  See Johnson, 2009 U.S. Dist. LEXIS 84092, 2009 WL 2575703, at *4 (as leave to amend pro se complaint which relied entirely on "vapor money" theory would be futile, the complaint was instead dismissed with prejudice) (citing G & G TIC. LLC v. Ala. Controls, Inc., 324 F. App'x 795, 799-800 (11th Cir. 2009) (per curiam)).

For the sake of completeness, however, the Court will briefly address Plaintiff's alleged claims and the grounds for dismissal raised by Defendants.

---

2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 181873 (W.D. Wash. Oct. 21, 2019)(while the court did not construe the plaintiff's claims to be based on the vapor money theory, the court dismissed with prejudice a complaint, almost identical to Amended Complaint in this case, that alleged fraud, RICO violations, and financial discrimination where plaintiff claimed that her mortgage debt was paid off when she tendered a "Credit Agreement Payoff Security Instrument" as a "registered, certified Private Banker, Creditor and National Bank" and signed it as "father, son, holy ghost.")

### A. Count I——FRAUD

Count I of the Amended Complaint alleges that Defendant has "presented Fraud in the factum upon this court of record by not providing proof of a valid 'Mortgage' and 'Note' documentation that Defendant claim[s] the Plaintiff owes." (Doc. #42, ¶ 20.) In support, Plaintiff alleges that the bifurcation of the "Mortgage" and "Note" in MERS is a "nullity," thus making both documents a fraud. (Id. at ¶¶ 24, 25.) Plaintiff argues that Defendant failed to provide a blue-inked signed mortgage promissory note, and Plaintiff believes Defendant filed a counterfeit copy of the "Mortgage Debt Lien Contract Security"[11] in the county records.[12] (Id. at ¶¶ 29, 30.)

Fraud in the factum is "rare and occurs when a legal instrument as actually executed differs from the one intended for execution by the person who executes it, or when the instrument may have had no legal existence, such as when a blind person signs a mortgage when misleadingly told that the paper is just a letter."

---

[11] In the Amended Complaint, Plaintiff does not identify the document that he designates as the "Mortgage Debt Lien Contract Security." See (Doc. #42, ¶ 29.) The Court presumes Plaintiff is referring to the recorded mortgage for the Bay Harbor property.

[12] The Amended Complaint also states that because of historic proven fraud of banks, mortgage and loan servicing companies, and appraisers, which led to the 2007-2008 collapse of the U.S. economy, Plaintiff is gravely concerned that the at-issue in mortgage and note has defects and is fraudulent. (Doc. #42, ¶ 28.)

Persona v. Mackey, No. 2:20-cv-2424-BHH-MHC, 2020 U.S. Dist. LEXIS 204242, at *17-18 (D.S.C. Oct. 7, 2020)(quoting Black's Law Dictionary (11th ed. 2019)) (internal citations omitted); Solymar Inv., Ltd. v. Banco Santander S.A., 672 F.3d 981, 994 (11th Cir. 2012) (stating that fraud in factum is the sort of fraud that "procures a party's signature to an instrument without knowledge of its true nature or contents."); Food Mktg. Consultants v. Sesame Workshop, No. 09-61776-CIV-ZLOCH/ROSENBAUM, 2010 U.S. Dist. LEXIS 38679, at *38 (S.D. Fla. Mar. 26, 2010) (fraud in factum occurs when "a party is tricked into assenting without understanding the significance of his action . . ..").

Here, the Amended Complaint does not include allegations that Plaintiff signed the promissory note without knowledge of its true nature or contents, or that Plaintiff signed the document without an understanding of the significance of his actions. Rather, Plaintiff contends that only the original blue-inked copy of the signed Note and the "County Recorded Mortgage Debt Lien Contract" will suffice as valid proof of any mortgage debt, and that Defendant filed a counterfeit copy of the promissory note in county records. (Doc. #42, ¶ 30.) Plaintiff now requests that he be provided with the original promissory note and mortgage debit lien so that he may prove fraud in factum. (Id. at ¶¶ 29-30.) As stated, these allegations are insufficient to state such a claim, and dismissal of this cause of action should be granted. See Ivy,

2019 U.S. Dist. LEXIS 182913, at *15 (dismissing with prejudice plaintiff's claim that the defendant committed fraud in the factum by not being able to produce the blue-inked promissory note). See also Provident Bank v. Cmty. Home Mortg. Corp., 498 F. Supp. 2d 558, 574 (E.D.N.Y. 2007) ("Where, as here, there is no evidence that the mortgagors were unaware that they were signing mortgage notes, or were falsely informed as to the nature of the notes, fraud in the factum cannot be asserted.").

To the extent the Amended Complaint is also alleging a fraud claim, Defendant argues it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). See Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007). That rule provides that "[i]n alleging of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, "[t]o satisfy the Rule 9(b) standard, [fraud claims] must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." Ambrosia Coal, 482 F.3d at 1316-17 (citing Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1380-81 (11th Cir. 1997)). "This means the

who, what, when [,] where, and how: the first paragraph of any newspaper story." Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006) (citations omitted). "Failure to satisfy Rule 9 (b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 549 U.S. 810, 127 S. Ct. 42, 166 L. Ed. 2d 18 (2006).

In addition to frivolous and immaterial allegations, Plaintiff's Amended Complaint contains a series of conclusory statements that Defendant committed fraud. Plaintiff's claims do not detail the "who, what, when, where, and how" of Defendant's purported fraudulent acts. Garfield, 466 F.3d at 1262; Ambrosia Coal, 482 F.3d at 1316-17. The Amended Complaint provides no supporting facts to explain why bifurcation of the mortgage and note is indeed fraudulent, or how this relates to any alleged fraudulent behavior by Defendant. See Brooks, 116 F.3d 1381 (A plaintiff who pleads fraud must "reasonably notify the defendants of their purported role in the scheme.") Additionally, Plaintiff has failed to allege particular evidentiary facts to establish what makes the recorded promissory note a counterfeit, the specific date, location or by whom the counterfeit copy was filed in the county records, the manner in which Plaintiff was misled, and what Defendant gained as a result of the alleged fraud. See Ivy, 2019 U.S. Dist. LEXIS 182913, at *17-18 (the court dismissed with prejudice a fraud claim where Plaintiff failed to allege

evidentiary facts demonstrating defendant filed a counterfeit copy of a "Mortgage Debt Lien Contract Security" in county records).

In the face of such pleading deficiencies, the Court dismisses Count I with prejudice and without leave to amend as it is clear no factual amendments can cure the deficiencies in Plaintiff's fraud claims and satisfy Rule 9(b). Corsello, 428 F.3d at 1012; G & G TIC. LLC, 324 F. App'x at 799-800.

**B. Count II——Breach of Contract**

Count II alleges that on May 8, 2019, Plaintiff presented to Defendant's legal representatives the Credit Agreement in the amount of $124,000, which Plaintiff maintains is "legal tender, as a pay-off, set-off, and discharges in-full the 'Note' claimed to be 'owned' by the Defendant," and is governed by principles of law applicable to tender of payment under a simple contract pursuant to U.C.C. § 3-603 and Florida Statute § 673.6031.[13] (Doc. #42, ¶¶

---

[13] U.C.C. § 3-603 and Florida Statute § 673.6031 are identical and state the following:

**§ 3-603. TENDER OF PAYMENT**

(a) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

(b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an endorser or accommodation party

33, 35-37.)   The Amended Complaint further states that despite Plaintiff providing Defendant's representatives with the Credit Agreement, they declined to sign it and refused to accept the Agreement as "tender of payment." (Id. at ¶¶ 38, 51.) Plaintiff nevertheless contends that because he left the Credit Agreement in the possession of Defendant's representatives, Defendant has in effect "accepted" the Agreement and the "simple contract was activated." (Id. at ¶¶ 39-40.)   The Amended Complaint goes on to allege that Defendant, subsequent to "accepting" the Credit Agreement, sent Plaintiff a mortgage statement seeking collection of mortgage debt by June 1, 2019, and in doing so, breached the simple contract (i.e., Credit Agreement). (Id. at ¶¶ 42A-B.)

Defendant contends that Plaintiff's breach of contract claim fails because it is based on a fictious instrument which is akin to the "vapor money theory" found to be utterly meritless by other

---

having a right of recourse with respect to the obligation to which the tender relates.

(c) If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged. If presentment is required with respect to an instrument and the obligor is able and ready to pay on the due date at every place of payment stated in the instrument, the obligor is deemed to have made tender of payment on the due date to the person entitled to enforce the instrument.

U.C.C. § 3-603; Fla. Stat. § 673.6031.

district courts, and because Defendant never "accepted" the Credit Agreement.  (Doc. #46, pp. 9-10, 12.)

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1313 (11th Cir. 2019) (quoting Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009)).  To succeed on a breach of contract claim, one of the elements a plaintiff must establish is the existence of a valid contract.  See Alexander v. Agilysys Inc., 696 F. App'x 487, 490 (11th Cir. 2017).  The necessary elements of a contract are an "offer, acceptance, and consideration." Pope v. Munroe Reg'l Med. Ctr., No. 5:04-cv-508-Oc-10GRJ, 2005 U.S. Dist. LEXIS 45871, at *6 (M.D. Fla. Aug. 1, 2005).

Based on the allegations set forth in Count II of the Amended Complaint, the breach of contract claim lacks legal merit.  This is so, because it is based upon Plaintiff's contention that he tendered payment pursuant to § 3-603 or § 673.6031, by providing a self-executed Credit Agreement (i.e., money) that discharged his mortgage debt.  As previously noted, this claim is based on the vapor money theory, which has been summarily dismissed by other federal courts as having no basis in law.  See, e.g., Winsey, 2017 U.S. Dist. LEXIS 100731, at *8-10; Johnson, 2009 U.S. Dist. LEXIS

84092, at *11-12; Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *4;
McLaughlin, 726 F. Supp. 2d at 212; Demmler, 2006 U.S. Dist. LEXIS
9409, at *10.

Even assuming *arguendo*, that Plaintiff's Credit Agreement is
meritorious, Plaintiff's breach of contract claim fails due to
Lakeview's refusal to sign and accept the Agreement (Doc. #42, ¶¶
38, 51), which is a necessary element of a valid contract. Pope,
2005 U.S. Dist. LEXIS 45871, at *6.  While Plaintiff argues that
by leaving the Credit Agreement in Defendant's possession equates
to acceptance, this cannot be true because "absent specific
indications of intent to accept an offer, an offeree's silence is
not acceptance of an offer." Winsey, 2017 U.S. Dist. LEXIS 100731,
at *9-10; see Awai, 2020 U.S. Dist. LEXIS 128056, at *12 (a
"unilateral attempt to impose a contractual obligation [does] not
create a duty on the part of the defendants to respond, and their
mere silence ... could not create a valid contract.").  Therefore,
Count II of the Amended Complaint is dismissed with prejudice
without leave to file a second amended complaint as it is based on
the "patently frivolous" vapor money theory, and Defendant never
accepted Plaintiff's Credit Agreement. Awai, 2020 U.S. Dist. LEXIS
128056, at *7.  See also Bryant v. Dupree, 252 F.3d 1161, 1163
(11th Cir. 2001) (holding that a plaintiff need not be given a
chance to amend if doing so would be futile); Rodriguez, 2008 U.S.
Dist. LEXIS 110010, at *7-8 (dismissing pro se parties complaints,

21

explaining that "these cases are totally without any legal foundation," and denying leave to amend because "there is no way for them to state a cause of action based on this ['vapor money'] theory.").

## C. Count III—Violation of Racketeering, RICO

The third cause of action alleges a violation of 18 U.S.C. § 1962(a), otherwise known as the Racketeer Influenced and Corrupt Organizations Act (RICO). Specifically, the Amended Complaint states that "Defendant may have been engaged in Civil Rights Violations with RICO Conspiracy and Racketeering as a Street Gang since the 1994 Securitization of mortgages or the inception of Defendant's claim mortgage debt." (Doc. #42, ¶ 63.) It further alleges that:

> Since the alleged debt was paid-off/set off on May 8th 2019 through the presentment of the $124,000 Tender of Payment by the Negotiable Security Instrument No. 000016806, the Defendant has clearly demonstrated: A violation of Section 1962(c), the requires (1) conduct i.e. sending debt collection statements (2) of an enterprise i.e. Lakeview Loan Servicing, LLC and[/] or their agent and sub-servicer LOANCARE, LLC (3) through a pattern i.e. Monthly statements demanding payment via U.S. Mail (4) of racketeering activity i.e. Collection of unlawful debt, because the loan was paid . . . This pattern of Collection of unlawful debt has occurred 12 times since June of 2019.

(Id. at ¶ 59.)

The Amended Complaint goes on to state that Defendant's continued request for monthly mortgage payments is extortion as Defendant has failed to recognize the "Note" is paid-off, and due

to the implied threat of foreclosure and poor credit ratings.  (Id. at ¶ 62.)   Plaintiff also claims that Defendant has created fraudulent investment portfolios by foreclosing on thousands of homes where no consideration was given, and Defendant, in turn, sells or assigns the mortgages with no associated risks.  (Id. at ¶ 64.)  According to Plaintiff, this action is another "derivative RACKETEERING scheme perpetrated by the Banks."  (Id.)

"The [RICO] statute makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'"  Cisneros v. Petland, Inc., 972 F.3d 1204, 1210 (11th Cir. 2020) (quoting 18 U.S.C. § 1962(c)).  To state a RICO claim upon which relief can be granted, a plaintiff must plausibly allege that the defendant: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff."  Id. at 1211.  To show a pattern of racketeering activity, plaintiff must establish at least two distinct but related acts of racketeering activity.  Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1283 (11th Cir. 2006).  The RICO Act defines "racketeering activity" comprehensively in 18 U.S.C. § 1961(1) to

include a variety of enumerated criminal offenses. Farrell v. Fannie Mae, No. 2:15-cv-20-FtM-29CM, 2015 U.S. Dist. LEXIS 129197, at *9 (M.D. Fla. Sep. 25, 2015). Moreover, "to make out a 'pattern' of racketeering, [a plaintiff] must plead at least two related acts of mail or wire fraud . . . and – with respect to each act – to allege with particularity the defendant's intentional participation in a 'scheme to defraud [plaintiff] of money or property' and [defendant's] use of either the mails or wires to execute the scheme." Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1151 (11th Cir. 2011)(quoting United States v. Ward, 486 F.3d 1212, 1222 (11th Cir. 2007)). Plaintiff must also allege that he was injured in his business or property and that the injury was by reason of the substantive RICO violation. Simpson v. Sanderson Farms, Inc., 744 F.3d 702, 705 (11th Cir. 2014); see Bernath v. Youtube LLC, No. 2:16-cv-40-FtM-29CM, 2017 U.S. Dist. LEXIS 39257, at *11 (M.D. Fla. Mar. 20, 2017).

Allegations of fraudulent predicate acts are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). See Farrell v. Fannie Mae, No. 2:15-cv-20-FtM-29CM, 2015 U.S. Dist. LEXIS 129197, at *8-10 (M.D. Fla. Sep. 25, 2015). "If a plaintiff fails to adequately plead any one of these elements, [he] has failed to state a claim upon which relief may be granted, and [his] complaint must be dismissed." Cisneros, 972 F.3d at 1211.

To the extent that Plaintiff seeks to assert a cause of action under RICO, the Court agrees with Defendant that Plaintiff's factual allegations are insufficient to withstand its Motion to Dismiss. First and foremost, Plaintiff's RICO claim is premised on legal fiction that Plaintiff's self-executed Credit Agreement is "money" and discharged his mortgage debt. "[A] promissory note may be a negotiable instrument, [but] the note itself is not money. It is nothing more than the acknowledgement of a debt and a promise to repay the debt at some date in the future." Winsey, 2017 U.S. Dist. LEXIS 100731, at *9 (M.D. Fla. June 29, 2017) (quoting Demmler, 2006 WL 640499, at *4. The Amended Complaint "cannot state a cause of action which relies upon the vapor money theory, and which is 'patently frivolous and a waste of judicial resources.'" Johnson, 2009 U.S. Dist. LEXIS 84092, at *11-12 (quoting Richardson v. Deutsche Bank Trust Co. Americas, No. 3:08-cv-01857, 2008 WL 5225824, at *7 (M.D. Pa. 2008)). See, e.g., Davis v. Wells Fargo Home Mortg., No. 3:19-cv-00410-FDW, 2020 U.S. Dist. LEXIS 30889, at *14-15 (W.D.N.C. Feb. 24, 2020)(denying similar RICO allegations); Awai, 2020 U.S. Dist. LEXIS 128056, at *14-15 (denying plaintiff's "RICO Conspiracy and Racketeering as a Street Gang" claim with prejudice as it was based on vapor money theory); Demmler, 2006 WL 640499, at *1, 3-4 (dismissing RICO Act claim, among others, finding that it would be a "waste of judicial resources to delve into the voluminous allegations . . ." because

the claims based on the "vapor money" theory are "utterly frivolous" and "patently ludicrous"); Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *2-8 (dismissing claim of RICO violations because it was based on the vapor money theory which "lacks any legal merit.").

Likewise, Plaintiff's Amended Complaint contains no factual allegations to support the existence of a plausible RICO claim. Even assuming that Defendant, along with LoanCare LLC, constitutes a RICO "enterprise," Plaintiff has failed to show that Defendant has engaged in the "collection of unlawful debt" when it sent Plaintiff monthly mortgage statements to request payment via U.S. mail. In the RICO context, the term "unlawful debt" includes "only debts pertaining to illegal gambling and usurious loans." Calvert v. JRK Prop. Holdings, No. 6:14-cv-1762-Orl-37KRS, 2014 U.S. Dist. LEXIS 201509, at *6 (M.D. Fla. Dec. 2, 2014) (citing 18 U.S.C. § 1961(6)). "[U]surious lending" is defined as lending at "at least twice the enforceable rate." McLaughlin, 726 F. Supp. 2d at 216. The Amended Complaint provides no allegations of illegal gambling or that Defendant has charged at least twice the enforceable rate with respect to his mortgage debt.

In addition, while Plaintiff alleges that Defendant has foreclosed on numerous homes without risk, Plaintiff has not alleged that Defendant foreclosed on his Bay Harbor property or engaged in a pattern of acts that caused injury to his property.

See Cisneros, 972 F.3d at 1211.  Nor is foreclosure sufficient to establish a RICO claim because "it is not an act of racketeering when a bank forecloses on a home."  Davis, 2020 U.S. Dist. LEXIS 30889, at *14-15.  Since Plaintiff has failed to allege a RICO violation and has based his claim on a fictitious Credit Agreement with respect to the vapor money theory, Defendant's Motion to Dismiss is granted and Count III is dismissed with prejudice without leave to amend because there is no plausible cause of action based on this theory.  See, e.g., G&G TIC, LLC, 324 F. App'x at 795; Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *7-8.

### D. Count IV—Lack of Jurisdiction to Collect as Holder In Due Course

Count IV of the Amended Complaint alleges that Defendant is no longer the holder in due course concerning his mortgage note because Plaintiff legally tendered the Credit Agreement as payment to Defendant for satisfaction of the mortgage debt, and Defendant "intentionally refused" to collect the final payment or payoff in the amount of $1,250, thus making Plaintiff the holder in due course.  (Doc. #42, ¶¶ 66-67.)  The Amended Complaint goes on to allege that "the bank" no longer has jurisdiction to collect any mortgage debt because the debt was paid "under United States; STATES; and Local Statutes pursuant to Government Policy, legal definition, and the 1933 Bankruptcy which continues today under the WAR POWERS ACT and Trading with the Enemy ACT." (Id. at ¶ 68.)

Not unlike the other claims in the Amended Complaint, the allegations in Count IV are founded upon Plaintiff's Credit Agreement, which is a fictious document that is premised upon the vapor money theory, and as such, does not present "a cognizable claim under any identifiable theory of recovery." Awai, 2020 U.S. Dist. LEXIS 128056, at *15-16 (the court dismissed with prejudice the plaintiff's claim that USSA was not the holder in due course because the defendants allegedly securitized the loan by sale to a "real estate backed TRUST" and have "accepted" Plaintiff's final payment of the mortgage through plaintiff's self-issued "Credit Agreement Payoff Security Instrument."); see Persona, 2020 U.S. Dist. LEXIS 204242, at *20-21 (denying similar claims because plaintiff had only made legal assertions of legal conclusions which were contrary to law and insufficient to establish a viable claim).

Additionally, the Amended Complaint alleges that Defendant sold the at-issue mortgage to an "Investor real estate backed TRUST," making the Trust investors the holder in due course and Defendant just a "Mortgage Manager Servicer/Debt collector," and as a result, "vitiates any claim of [Defendant] having jurisdiction to collect . . .." (Id. at ¶¶ 70, 73.) The Amended Complaint repeats the argument that Defendant failed to provide validation of debt (i.e., a blue-inked signed promissory note) upon Plaintiff's request, and continues to claim Plaintiff owes mortgage debt. (Id. at ¶¶ 71-71.)

While it may be true that the mortgage or promissory note was transferred or sold, the Amended Complaint fails to advance any legal authority showing that if "Trust investors" are the holder of Plaintiff's mortgage note, it obviates Plaintiff's obligation to pay his mortgage debt for the Bay Harbor property. "[N]either transfer/assignment nor securitization voids the borrower's note/mortgage obligations." Byrd v. Bank Mortg. Sols., No. 14-14069-CV-MARTINEZ/LYNCH, 2014 U.S. Dist. LEXIS 204927, at *7 (S.D. Fla. Apr. 17, 2014) (citing Altier v. Fannie Mae, No. 1:13-cv-164-MW/GRJ, 2013 U.S. Dist. LEXIS 172215 (N.D. Fla. Dec. 6, 2013)). "Indeed, the borrower does not even have standing to challenge the validity of an assignment, transfer, or securitization of a mortgage/note." Byrd, 2014 U.S. Dist. LEXIS 204927, at *7. Furthermore, "a borrower's demand for the creditor to validate the debt obligation and the creditor's perceived failure to produce such validating documentation does not by itself invalidate the debt." Id. (citing Lane v. Guar. Bank, No. 6:13-cv-85-Orl-18DAB, 2013 U.S. Dist. LEXIS 49440 (M.D. Fla. Apr. 1, 2013)). Count IV is therefore dismissed with prejudice as it fails to state a claim upon which relief may be granted under Rule 12(b)(6). See, e.g., Awai, 2020 U.S. Dist. LEXIS 128056, at *15-16; Persona, 2020 U.S. Dist. LEXIS 204242, at *20-21. Further, Plaintiff will not be given an opportunity to amend his Complaint as his claim is based on the vapor money theory and lacks any legal foundation upon which a

cause of action could be based.  See, e.g., G&G TIC, LLC, 324 F. App'x at 795; Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *7-8.

**E. Count V—Financial Discrimination**

Count V of the Amended Complaint claims that Defendant financially discriminated against Plaintiff by refusing the "State Licensed Credit Agreement Payoff Security Instrument," as a legal tender of payment in the form of "money," and by LoanCare, LLC only accepting "certain types of payments [on behalf of Defendant], which is a violation of law." (Doc. #42, ¶¶ 78-80, 82.)  The Amended Complaint alleges that Defendant's discriminatory actions violate the "TENDER ACT, SECURITY ACT, FCRA, FCDPA, CIVIL RIGHTS ACT, and Title 12 Banking Laws." (Id. at ¶ 80.)

Defendant argues it cannot be deemed to have discriminated against Plaintiff by refusing to accept a fraudulent document as payment-in-full for a mortgage loan, and that no cause of action exists under federal or Florida law for "financial discrimination." (Doc. #46, p. 14.)  Defendant urges the Court to dismiss Count V because it is "largely incomprehensible and legally insufficient" in setting forth any viable claim.  (Id., p. 15.) The Court agrees.

Even liberally construing Plaintiff's Amended Complaint, it falls short of stating a claim that is plausible on its face. Plaintiff cites to no legal authority to support his allegation that Defendant is discriminating against him by requiring him to

repay his mortgage debt using U.S. currency rather than his self-executed Credit Agreement. Not surprisingly, Plaintiff's financial discrimination cause of action is identical to complaints brought before other federal courts, all of which were found to be insufficient claims under Rule 12(b)(6). See, e.g., Persona, 2020 U.S. Dist. LEXIS 204242, at *21-22 (claiming defendant's refusal to accept as legal tender a "Credit Agreement Payoff Security Instrument" violated the "Tender Act, Security Act, FCRA, FDCPA, Civil Rights Act, RICO, 12 U.S.C. § 24, RESPA, and other banking laws."); Awai, 2020 U.S. Dist. LEXIS 128056, at *16-18; Nowak v. JP Morgan Chase Bank, N.A., No. 18-cv-4972, 2019 U.S. Dist. LEXIS 137511, at *3-4 (E.D.N.Y. Aug. 14, 2019); Goodwin, 2019 U.S. Dist. LEXIS 225173, at *2, 7-8; Ivy, 2019 U.S. Dist. LEXIS 182913, at *20-27.

With respect to any of the referenced statutes, Plaintiff fails to cite to any part of these statutes or provide sufficient factual allegations regarding how Defendant violated such laws. The Supreme Court has made it clear that a plaintiff must do more than make conclusory statements to state a claim. See Iqbal, 556 U.S. at 677-78; Twombly, 550 U.S. at 555. See also Jones, 787 F.3d at 1107 (". . . it is not enough just to invoke a legal theory devoid of any factual basis.") The Court therefore finds Count IV fails to meet pleading standards and should be dismissed with prejudice under Rule 12(b)(6) as the basis of the financial

discrimination claim is founded upon the vapor money theory. See, e.g., G&G TIC, LLC, 324 F. App'x at 795; Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *7-8.

**F. Count VI——Other Crimes**

Count VI of the Amended Complaint alleges multiple claims against Defendant that include: 1) Collusion/Conspiracy and Theft By Deception; 2) Unjust Enrichment; 3) Extortion; 4) Duress; 5) Illegal Interest Charged/Collected; and 6) Mail Fraud.  (Doc. #42, pp. 18-19.)  Defendant argues Count VI should be dismissed because it impermissibly combines multiple claims into one count and as a result, is a shotgun pleading. (Doc. #46, p. 17.)

In Weiland, the Eleventh Circuit identified four types of shotgun pleadings, one of which "is one that commits the sin of not separating into a different count each cause of action or claim for relief."  Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015).  Here, Count VI alleges six different causes of action, which is undoubtedly a shotgun pleading.  See id.  Such a pleading fails to give Defendant "adequate notice of the claims against [it] and the grounds upon which each claim rests" and warrants dismissal.  Id. at 1323.  The Court, however, will briefly address the facts alleged in support of each cause of action in Count VI.

### 1) Collusion/Conspiracy and Theft by Deception

The Amended Complaint alleges that Defendant and its authorized agent, LoanCare, LLC, by conspiring to deem Plaintiff's self-executed Credit Agreement to be an "unacceptable remittance coupon," also conspired to deprive Plaintiff of the value of his tendered payment of $124,000. (Doc. #42, ¶ 83.)[14]

Under Florida law, a claim for civil conspiracy must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Solar City, Inc. v. Crystal Clear Concepts, LLC, No. 8:19-cv-2538-T-33TGW, 2020 U.S. Dist. LEXIS 4321, at *10 (M.D. Fla. Jan. 10, 2020) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1271 (11th Cir. 2009)). Here, the Amended Complaint does not contain any facts alleging the elements of a civil conspiracy claim. In particular, Plaintiff has failed to allege the existence of an agreement between Defendant and LoanCare to engage in unlawful conduct, or that they engaged in an overt act in pursuance of the conspiracy.

---

[14] The Amended Complaint appears to have two paragraphs identified as number "83." See (Doc. #42, pp. 17-18.) The Court, however, will refer to the paragraphs as numbered.

Moreover, the civil conspiracy claim is based upon Defendant and Loancare's refusal to accept Plaintiff's Credit Agreement as payment for his mortgage debt, which this Court, along with other federal courts, have already determined to be a patently frivolous document. See, e.g., Winsey, 2017 U.S. Dist. LEXIS 100731, at *8-10; Johnson, 2009 U.S. Dist. LEXIS 84092, at *11-12; Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *4; McLaughlin, 726 F. Supp. 2d at 212; Demmler, 2006 U.S. Dist. LEXIS 9409, at *10. Thus, Plaintiff's claim with respect to civil conspiracy is dismissed with prejudice.

**2) Unjust Enrichment**

The unjust enrichment cause of action is similarly based upon the allegation that Plaintiff received "no consideration for the $124,000.00 face value tender of payment presented to the Defendant," and Plaintiff believes that either Defendant or LoanCare could have sold or securitized the security instrument (i.e., Credit Agreement) without due consideration to Plaintiff. (Doc. #42, ¶ 86.)

"A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." State Farm Mut. Auto. Ins. Co. v. First Choice Care Chiropractic & Rehab.

Ctr., No. 8:20-cv-330-T-60CPT, 2020 U.S. Dist. LEXIS 172166, at *5 (M.D. Fla. Aug. 17, 2020).  While the Amended Complaint fails to allege that the Plaintiff conferred any benefit on the Defendant, it does allege that Plaintiff provided the Credit Agreement to Defendant for which he received no consideration in return. Plaintiff, however, has admitted that Defendant refused to sign the document and did not accept it as "tender of payment" for his mortgage debt.  (Doc. #42, ¶ 38.)  Thus, Plaintiff has failed to allege an unjust enrichment claim upon which relief may be granted.

Further, the Credit Agreement is based on the vapor money theory and is unenforceable as a matter of law. See Demmler, 2006 U.S. Dist. LEXIS 9409, at *13-14.  Accordingly, any claim for unjust enrichment in Count VI is dismissed with prejudice with no leave to amend as "there is no way . . . to state a cause of action based on this [vapor money] theory." Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *7-8.  See also, G&G TIC, LLC, 324 F. App'x at 795.

### 3) Extortion and Duress

Count VI of the Amended Complaint also alleges a civil claim for extortion and duress. Specifically, Plaintiff alleges that Defendant continues to send monthly mortgage statements for payment of the Bay Harbor mortgage debt that has been allegedly paid-off by Plaintiff's self-executed Credit Agreement, and in doing so, is extorting money from him under duress due to an

implied threat of foreclosure and bad credit.  (Doc. #42, ¶¶ 87-88.)  "There is no recognized private right of action for extortion in Florida and specifically under Fla. Stat. § 836.05." Harris v. Jan, No. 2:18-cv-383-FtM-29MRM, 2018 U.S. Dist. LEXIS 173223, at *5 (M.D. Fla. Oct. 9, 2018).  Additionally, Plaintiff's claim for extortion is based upon the fictious Credit Agreement that cannot be characterized as "money" and has not discharged Plaintiff's original mortgage debt.  See Demmler, 2006 U.S. Dist. LEXIS 9409, at *13-14.  Therefore, as a matter of law, Defendant's Motion is granted with respect to Plaintiff's claims for extortion and subsequent duress.  Plaintiff will not be granted an opportunity to amend his Complaint as doing so would be futile.  See, e.g., G&G TIC, LLC, 324 F. App'x at 795; Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *7-8.

### 4) Illegal Interest Charged/Collected

Not unlike the other claims in Count VI, Plaintiff alleges that pursuant to Florida Statute § 673.6031(3) he legally tendered full payment for his original mortgage debt when he presented the Credit Agreement to Defendant, and as a result, Defendant has been illegally charging compounding interest on the mortgage loan for the Bay Harbor property.  (Doc. #42, ¶ 89.)  In Winsey, the Court rejected a similar argument and dismissed the claim, stating:

> And with respect to the section 673.6031 claim, that
> claim is merely the vapor money theory disguised with a
> new name. To be sure, the claim under section 673.6031

is premised on the idea that Winsey's "promissory note"
was the equivalent of actual money and when Winsey sent
Nationstar the note, she tendered payment under section
673.6031. As noted earlier though, a "note itself is not
'money.' It is nothing more than the acknowledgment of
a debt and a promise to repay the debt at some date in
the future." <u>Demmler</u>, 2006 U.S. Dist. LEXIS 9409, 2006
WL 640499, at *4. Because the basis for the section
673.6031 claim has been roundly rejected by other
courts, the claim is due to be dismissed with prejudice.

<u>Winsey</u>, 2017 U.S. Dist. LEXIS 100731, at *10-11. For similar reasons addressed in <u>Winsey</u>, this Court dismisses with prejudice Plaintiff's claim for illegal interest charged in Count VI of the Amended Complaint.

**5) Mail Fraud**

The Amended Complaint alleges that "Defendant continues to send Mortgage collection statements via U.S. Mail to the Plaintiff. Since the debt was satisfied with the Security Instrument No. 000016806 this action constitutes Mail Fraud." (Doc. #42, ¶ 90.) This claim also fails as it is based upon the patently frivolous theory that Plaintiff's Credit Agreement discharged his mortgage debt, and because Plaintiff has no civil remedy under the federal mail fraud statute. <u>See</u> <u>Austin v. Glob. Connection</u>, 303 F. App'x 750, 752 (11th Cir. 2008) (holding that "federal wire and mail fraud statutes are criminal statues which do not provide for civil remedies."). The mail fraud claim set forth in Count VI of the Amended Complaint is therefore dismissed with prejudice under Rule

12(b)(6).  See, e.g., G&G TIC, LLC, 324 F. App'x at 795; Rodriguez, 2008 U.S. Dist. LEXIS 110010, at *7-8.

## IV.

Defendant has also filed a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11.  (Doc. #47.)  Defendant requests that this Court impose Rule 11 sanctions against Plaintiff: 1) in an amount to be determined and that represents the attorney's fees and cost incurred by Defendant for in defending "baseless claims from inception;" 2) dismiss all claims with prejudice; and 3) award any additional relief the Court deems just and proper. (Id., p. 15.)  Plaintiff did not file a response.

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." Uppal v. Wells Fargo Fin., No. 8:19-cv-2319-MSS-TGW, 2021 U.S. Dist. LEXIS 25907, at *4 (M.D. Fla. Feb. 11, 2021) (quoting Peer v. Lewis, 606 F.3d 1306, 1311 (11th Cir. 2010)). "Rule 11 requires district courts to impose 'appropriate sanctions' after notice and a reasonable opportunity to respond, where an attorney or party submits a pleading to the court that: (1) is not well-grounded in fact, i.e., has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose." Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1294 (11th Cir. 2002). A claim is not legally tenable when (1) the party's claims are objectively

frivolous; and (2) the person who signed the pleadings should have been aware that they were frivolous. See Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998).

Courts have inherit power to impose Rule 11 sanctions, "that include striking frivolous pleadings and defenses, imposing attorney's fees and costs, and outright dismissal of a lawsuit." Stonecreek-AAA, Ltd. Liab. Co. v. Wells Fargo Bank N.A., No. 1:12-cv-23850-COOKE/TUR, 2014 U.S. Dist. LEXIS 189048, at *3 (S.D. Fla. May 13, 2014). "According to the Eleventh Circuit, '[t]he key to unlocking the inherent power of the Court is a finding of bad faith.'" Barash v. Kates, 585 F. Supp. 2d 1347, 1361 (S.D. Fla. 2006) (quoting Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)). Bad faith, in part, occurs when the court finds "a . . . fraud has been practiced upon it, or that the very temple of justice has been defiled." Id. at 1362 (quoting Chambers v. Nasco, 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44.

Rule 11 is applicable to pro se litigants as well as attorneys. Makere v. Allstate Ins. Co., No. 3:20-cv-905-MMH-JRK, 2021 U.S. Dist. LEXIS 23346, at *37 n.13 (M.D. Fla. Feb. 8, 2021) (citing Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988)). "[T]he court must take into account the plaintiff's pro se status

when determining whether the filing was reasonable." <u>Meidinger v.</u>
<u>Healthcare Indus. Oligopoly</u>, 391 F. App'x 777, 778 (11th Cir. 2010)
(quoting <u>Thomas v. Evans</u>, 880 F.2d 1235, 1240 (11th Cir. 1989)).

The Court declines to impose Rule 11 sanctions. The Court
has dismissed the entirety of Plaintiff's Amended Complaint with
prejudice and does not find the imposition of sanctions is
warranted at this time.

Accordingly, it is now

**ORDERED**:

1.   Defendant's Motion to Dismiss (Doc. #46) is **GRANTED**.

2.   Defendants Motion for Sanctions (Doc. #47) is **DENIED**.

3.   The Amended Complaint (Doc. #42) is **dismissed with**
**prejudice.**

**DONE AND ORDERED** at Fort Myers, Florida, this __26th__ day of
April, 2021.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Parties of record

40